UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JESSE A. DUGAY,<br>    Plaintiff,<br><br>v.<br><br>QUIRK WIRE CO., INC. AND<br>HARRISON QUIRK,<br>    Defendants. | )<br>)<br>)<br>)  DOCKET NO.<br>)<br>)  04-40030-NMG<br>)<br>) |

## COMPLAINT AND DEMAND FOR TRIAL BY JURY

### Jurisdiction

1. Jurisdiction of this action arises under the Americans with Disabilities Act ("ADA") 42 U.S.C. § 12111, et seq., and The Family and Medical Leave Act ("FMLA"), 29 U.S.C. §2601, et. seq.

### Venue

2. Venue is proper in this court in that this is the judicial district in which Defendant resides and in which the relevant events occurred.

### Parties

3. Plaintiff Jesse A. Dugay ("Plaintiff") is an individual residing in Ware, Hampshire County, Massachusetts.

4. Defendant Quirk Wire Co., Inc. ("Quirk Wire") is a corporation doing business in the Commonwealth of Massachusetts with a principal place of business at Route 9, West Brookfield, Worcester County, Massachusetts.

RECEIPT # 404276
AMOUNT $ 150.00
SUMMONS ISSUED ✓
LOCAL RULE 4.1 ✓
WAIVER FORM ✓
MCF ISSUED ✓
BY DPTY. CLK. SJones
DATE 2-27-04

5.  Defendant Harrison Quirk ("Mr. Quirk") is an individual residing in the Commonwealth of Massachusetts with a last known place of business at Route 9, West Brookfield, Worcester County, Massachusetts.

General Allegations

6.  Plaintiff was employed by Defendant Quirk Wire beginning on or about March 18, 1996.

7.  Plaintiff's job title was extruder.

8.  Plaintiff worked for Quirk Wire for approximately 7 years.

9.  Defendant Harrison Quirk ("Mr. Quirk") is the President of Quirk Wire.

10. On February 21, 2003, Plaintiff was summarily terminated from his employment by Mr. Quirk for alleged performance reasons.

11. Plaintiff performed his job satisfactorily throughout his employment at Quirk Wire.

12. Plaintiff received no disciplinary actions or warnings prior to his termination.

13. Plaintiff received regular pay raises during his employment at Quirk Wire.

14. Plaintiff received a pay raise in January 2003, the month before his termination.

15. Mr. Quirk stated to Plaintiff at the time of his last review that he was doing a good job and that he should keep up the good work.

16. On Friday, July 13, 2001, Plaintiff suffered a work-related injury to my right eye when wire that he was cutting from a spool sprung back and struck him in the eye.

17. Plaintiff was seen in the emergency room that day at Mary Lane Hospital. The doctor examined his eye and sent Plaintiff back to work.

18. Plaintiff continued to work for the remainder of the weekend. However, Plaintiff had continued pain in his eye and began to suffer loss of vision.

19. On July 17, 2001, Plaintiff was evaluated by Dr. Balin at the Balin Eye Center. Plaintiff was immediately referred to New England Retina Consultants.

20. Plaintiff was diagnosed with a torn retina and underwent laser surgery on July 18, 2001.

21. Following that surgery, Plaintiff continued to experience significant vision problems. Plaintiff's vision was "cloudy." He had a blind spot. Plaintiff also had problems with depth perception and had occasional light flashes.

22. As a result of his eye injury, Plaintiff was out of work from approximately July 18, 2001 until approximately February 2002.

23. Plaintiff received worker's compensation benefits during this period.

24. Following Plaintiff's return to work in approximately February 2002, Plaintiff continued under medical care for this injury and continued to experience vision problems.

25. Plaintiff was diagnosed with a vitreous hemorrhage along with the torn retina.

26. On or about March 29, 2002, Plaintiff underwent another laser surgery on his eye.

27. Following this second surgery, Plaintiff continued to experience significant vision problems. Plaintiff continued to have blurry vision, a blind spot, lost peripheral vision and occasional light flashes.

28. Plaintiff's vision problems continue to the present day.

29. Plaintiff has continued with medical care, but his doctors advise that he may be at a medical end result.

30. Plaintiff was out of work for three days from December 27-29, 2002 on FMLA leave due to the birth of his daughter.

31. Mr. Quirk was unhappy that Plaintiff was taking that time off.

32. Mr. Quirk specifically asked Plaintiff to work that Sunday, December 29, 2002 despite the circumstances.

33. Plaintiff told Mr. Quirk that he could not because he was bringing my wife and newborn home from the hospital that day.

34. In or about January 2003, an OSHA inspector came to Quirk Wire to investigate the circumstances of Plaintiff's eye injury.

35. Plaintiff worked the weekend shift at Quirk Wire - Friday, Saturday and Sunday.

36. Plaintiff was ill on two Sundays, February 9, 2003 and February 16, 2003. Plaintiff had to leave work early on both days.

37. On February 9, 2003, Plaintiff went to Mary Lane Hospital and had to receive IV fluids and medication. The presumed diagnosis was Norwalk virus.

38. On February 16, 2003, Plaintiff again went to Mary Lane Hospital. Plaintiff was diagnosed with bronchitis and an ear infection. I was given medications and the doctor ordered bed rest.

39. On Monday, February 17, 2003, Mr. Quirk called Plaintiff at home. Mr. Quirk sounded upset. He said that he needed to get the extruder going.

40. Though Plaintiff was still very ill, Plaintiff told Mr. Quirk that he would come in if Mr. Quirk could not get anyone else to run it.

41. Mr. Quirk still sounded upset. He told Plaintiff that he would call back if he could not get another employee, Mark Long, to run it. Mr. Quirk did not call back.

42. On February 21, 2003, in the midst of Plaintiff's shift, Mr. Quirk terminated Plaintiff's employment.

43. Mr. Quirk told Plaintiff that he was "costing him too much."

44. Mr. Quirk showed Plaintiff a work ticket that indicated that Plaintiff had made an error on a work order.

45. Plaintiff had made a mistake on the work order, but had caught the mistake and followed proper procedure in curing it.

46. Plaintiff explained to Mr. Quirk that the mistake happened because Plaintiff had misread a ticket that was written oddly.

47. Plaintiff said, "You can't be firing me for this." Mr. Quirk said that it was not just this, "there was a long list of things."

48. When Plaintiff asked to discuss these things with him, Mr. Quirk said, "I don't need any reason to fire you. I need to make decisions that are best for this company."

49. Mr. Quirk told Plaintiff that he liked Plaintiff and respected him as a person, "but your services are no longer needed." He told Plaintiff to punch out and to "see Mary" before he left.

50. The stated reason for Plaintiff's termination is a pretext for unlawful discrimination.

51. Defendants treated Plaintiff in a disparate manner concerning the stated reason for termination.

52. Mistakes were not uncommon at the workplace.

53. There were some known equipment problems that contributed to mistakes in order production.

54. Plaintiff's mistakes were neither more frequent not more serious than other workers.

55. Mr. Quirk had told Plaintiff that he was one of the better workers and that if he had four or five more employees like Plaintiff, he would be "making money hand over fist."

56. Quirk Wire, at times material hereto, was self-insured for workers' compensation purposes.

57. Being was self-insured for workers' compensation meant that Quirk Wire would be financially responsible for any worker's compensation benefits paid to its workers for work injuries.

58. Mr. Quirk told his employees, including Plaintiff, on several occasions that no worker's compensation claims had been filed against the company.

59. Upon information and belief, Plaintiff's was the first or one of the first worker's compensation claims that Quirk Wire had.

60. Mr. Quirk discouraged his employees from filing worker's compensation claims.

61. One example of this discouragement was in approximately the mid-1990's. A worker named Brian Archambault injured himself at work when he was struck in the head by a pulley.

62. Mr. Quirk went to the hospital and told Brian Archambault that he would take care of the medical bills personally.

63. Upon information and belief, Mr. Archambault's medical bills were paid in cash by Mr. Quirk.

64. Upon information and belief, Mr. Quirk did this to avoid having to report a work injury and/or having to report an OSHA-covered accident.

65. When Plaintiff returned to work from the emergency room on the day that he injured his eye, Mr. Quirk called Plaintiff into the office and asked Plaintiff why he did not let him take care of the hospital bill, rather than reporting it as a worker's compensation injury.

66. Prior to his termination, Plaintiff was not aware that his job was in jeopardy.

67. Subsequent to his termination, Plaintiff obtained a copy of his personnel record from Quirk Wire.

68. Review of Plaintiff's personnel record revealed a compilation of documents, unknown to Plaintiff, concerning alleged production mistakes that Defendants attributed to Plaintiff.

69. This documentation of alleged production mistakes by Plaintiff is largely inaccurate and misleading.

70. Defendants singled Plaintiff out and documented alleged performance issues following Plaintiff's return to work from his work injury.

71. There are no positive remarks or notes in Plaintiff's personnel record.

72. There are no notes at all in Plaintiff's personnel record concerning events before May 2002, though Plaintiff had worked for Quirk Wire since March 18, 1996.

73. Plaintiff is deemed a qualified handicapped person pursuant to M.G.L. c. 152, §75B since he had sustained a work-related injury and was able to perform the essential functions of a particular job with or without accommodation. Plaintiff held that protected status when he was terminated.

74. Plaintiff is a qualified handicapped person and/or a qualified individual with a disability within the meaning of M.G.L. c. 151B and the ADA.

75. Upon information and belief, Plaintiff was replaced by a non-handicapped and non-disabled person.

76. Defendants intentionally discriminated against Plaintiff based on his disability or handicap.

77. Defendants discriminated against Plaintiff because of his disability, his record of a disability and/or his perceived disability.

78. Plaintiff was at all relevant times qualified to perform the essential functions of his job with or without accommodation.

79. Defendants' acts were intentional, malicious and/or done with reckless indifference to Plaintiff's rights.

80. Plaintiff has been injured and damaged by Defendants' acts.

81. Plaintiff has been the victim of intentional employment discrimination by Defendants.

82. Plaintiff has been injured and damages by Defendants' acts.

83. Defendants' acts were intentional, malicious and/or done with reckless indifference to Plaintiff's rights.

84. Quirk Wire at all relevant times employed more than 15 persons.

85. Plaintiff has complied with all statutory requirements and conditions precedent necessary to maintain this action, namely the timely filing of a charge of discrimination with the Massachusetts Commission Against Discrimination and the Equal Employment Opportunity Commission.

86. On December 4, 2003, the EEOC issued Plaintiff a notice of right to sue.

## COUNT I
### Violation of the Americans With Disabilities Act
(Against Quirk Wire only)

87. Plaintiff repeats the allegations contained in paragraphs 1 through 86 as if fully set forth herein.

88. Plaintiff at all relevant times was a qualified individual with a disability within the meaning of 42 U.S.C. 12111 §101(8).

89. Defendant Quirk Wire's acts represent, inter alia, intentional violations of the Americans with Disabilities Act ("ADA") 42 U.S.C. § 12101, et seq.

## COUNT II
### Violation of M.G.L. c. 151B – Handicap Discrimination
(Against both Defendants)

90. Plaintiff repeats the allegations contained in paragraphs 1 through 89 as if fully set forth herein.

91. Defendants' conduct represents, inter alia, intentional discrimination on the basis of handicap in violation of M.G.L. c. 151B, s. 4(16).

92. Mr. Quirk aided and abetted Quirk Wire in such discrimination and unlawfully interfered with Plaintiff's rights in violation of M.G.L. c. 151B, s. 4(4A) and 4(5).

## COUNT III
### Violation of M.G.L. c. 152, s. 75B
(Against Quirk Wire only)

93. Plaintiff repeats the allegations contained in paragraphs 1 through 92 as if fully set forth herein.

94. Quirk Wire terminated and otherwise discriminated against Plaintiff because of his assertion of rights under the Massachusetts workers' compensation laws.

95. Quirk Wire's acts represent, inter alia, violations of M.G.L. c. 152, s. 75B.

## COUNT IV
### (Violation of the FMLA)
(Against Quirk Wire only)

96. Plaintiff repeats the allegations contained in paragraphs 1 through 95 as if fully set forth herein.

97. Plaintiff was employed by Quirk Wire for more than one year.

98. Quirk Wire at all relevant times employed more than fifty persons.

99. Quirk Wire is a covered employer within the meaning of The Family and Medical Leave Act, 29 U.S.C. §2601, et.seq. ("FMLA").

100. Under the FMLA, Plaintiff was entitled to up to twelve weeks of protected medical leave for a serious health condition and/or for the birth of a child.

101. Quirk Wire discriminated against and ultimately terminated Plaintiff for taking protected medical leave.

102. Quirk Wire committed willful violations of 29 U.S.C. §2615.

## COUNT V
### (Intentional Infliction Of Emotional Distress)
(Against Defendant Harrison Quirk only)

103. Plaintiff repeats the allegations contained in paragraphs 1 through 102 as if fully set forth herein.

104. Mr. Quirk intended to inflict emotional distress upon Plaintiff or he knew or should have known that emotional distress was the likely result of his conduct.

105. The conduct of Mr. Quirk was extreme and outrageous and beyond all possible bounds of decency and utterly intolerable in a civilized community.

106. The actions of Mr. Quirk caused severe emotional distress.

107. Plaintiff's emotional distress was severe and of a nature that no reasonable person could be expected to endure it.

## RELIEF SOUGHT

WHEREFORE, the Plaintiff prays that this Honorable Court:

A. Enter judgment against Defendant Quirk Wire on Count I for compensatory damages, punitive damages, reasonable attorneys' fees, interest and costs.

B. Enter judgment against both Defendants on Count II for compensatory damages, punitive damages, reasonable attorneys' fees, interest and costs.

C.      Enter judgment against Defendant Quirk Wire on Count III for compensatory damages, reasonable attorneys' fees, interest and costs.

D.      Enter judgment against Quirk Wire on Count IV for damages, liquidated damages, reasonable attorneys' fees, interest and costs.

E.      Enter judgment against Defendant Harrison Quirk on Count V for compensatory damages, interest and costs.

F.      Order Defendant Quirk Wire to reinstate Plaintiff with back pay.

G.      Enter such other and further relief as this Honorable Court may deem just and proper.

**PLAINTIFF CLAIMS A TRIAL BY JURY ON ALL COUNTS.**

JESSE A. DUGAY,

By his Attorney,

*/s/ Richard Mulhearn*

Richard A. Mulhearn
BBO: 359680
Law Offices of Richard A. Mulhearn
41 Elm Street
Worcester, MA 01609
Tel: (508) 753-9999

February 27, 2004.

**04-40030**

JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

### I. (a) PLAINTIFFS
Jesse A. Dugay

(b) County of Residence of First Listed Plaintiff __Hampshire__
(EXCEPT IN U.S. PLAINTIFF CASES)

### DEFENDANTS
Quirk Wire Co., Inc. and Harrison Quirk

County of Residence of First Listed _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Richard A. Mulhearn, Law Offices of Richard A. Mulhearn, 41 Elm St., Worcester, MA 01609 (508) 753-9999

Attorneys (If Known)

### II. BASIS OF JURISDICTION (Place an "X" in One Box Only)
- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | Med. Malpractice | ☐ 625 Drug Related Seizure of Property 21 USC | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury — Product Liability | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/Exchange |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☒ 442 Employment | Habeas Corpus: | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| | | ☐ 555 Prison Condition | | | |

### V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

### VI. CAUSE OF ACTION (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
42 U.S.C. 12111, ADA; 29 U.S.C. 2601, FMLA; disability discrimination

### VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ _____
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

### VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____
DOCKET NUMBER _____

DATE 2/27/04
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**
RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

**04-40030**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY) __Jesse A. Dugay v.__
   __Quirk Wire Co., Inc.__

2. CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LISTED ON THE CIVIL COVER SHEET. (SEE LOCAL RULE 40.1(A)(1)).

   \_\_\_  I.    160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   **X**  II.   195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,    *Also complete AO 120 or AO 121
              740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.     for patent, trademark or copyright cases

   \_\_\_ III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
              315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
              380, 385, 450, 891.

   \_\_\_ IV.   220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
              690, 810, 861-865, 870, 871, 875, 900.

   \_\_\_  V.   150, 152, 153.

3. TITLE AND NUMBER, IF ANY, OF RELATED CASES. (SEE LOCAL RULE 40.1(G)). IF MORE THAN ONE PRIOR RELATED CASE HAS BEEN FILED IN THIS DISTRICT PLEASE INDICATE THE TITLE AND NUMBER OF THE FIRST FILED CASE IN THIS COURT.

   _____

4. HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS COURT?

   YES    **NO**

5. DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING THE PUBLIC INTEREST? (SEE 28 USC §2403)

   YES    **NO**

   IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY?

   YES    NO

6. IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO TITLE 28 USC §2284?

   YES    **NO**

7. DO ALL OF THE PARTIES IN THIS ACTION, EXCLUDING GOVERNMENTAL AGENCIES OF THE UNITED STATES AND THE COMMONWEALTH OF MASSACHUSETTS ("GOVERNMENTAL AGENCIES"), RESIDING IN MASSACHUSETTS RESIDE IN THE SAME DIVISION? - (SEE LOCAL RULE 40.1(D)).

   **YES**    NO

   A. IF YES, IN WHICH DIVISION DO ALL OF THE NON-GOVERNMENTAL PARTIES RESIDE?

      EASTERN DIVISION    **CENTRAL DIVISION**    WESTERN DIVISION

   B. IF NO, IN WHICH DIVISION DO THE MAJORITY OF THE PLAINTIFFS OR THE ONLY PARTIES, EXCLUDING GOVERNMENTAL AGENCIES, RESIDING IN MASSACHUSETTS RESIDE?

      EASTERN DIVISION    CENTRAL DIVISION    WESTERN DIVISION

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME    Richard A. Mulhearn
ADDRESS            41 Elm St., Worcester, MA 01609
TELEPHONE NO.      (508) 753-9999

(Cover sheet local.wpd - 11/27/00)